IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-40129 |
| | ) | |
| FRIEDMAN'S INC., et al., | ) | Chapter 11 |
| | ) | Jointly Administered |
| | ) | |
| | ) | Hon. Lamar W. Davis, Jr. |
| Debtors. | ) | |

FILED
at 11 O'clock & 06 min A M
Date 4/28/05
JB
United States Bankruptcy Court
Savannah, Georgia

## ORDER APPROVING JOINT INTEREST AGREEMENT AND IMPLE-MENTING PROTECTIVE ORDERS AND GRANTING RELATED RELIEF

Upon the motion dated April 8, 2005 (the "Motion") of Friedman's, Inc. ("Friedman's") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order pursuant to 11 U.S.C. §§ 105, 107 and 1103 and Rules 7026 and 9018 of the Bankruptcy Rules, approving the Joint Interest Agreement[1] between the Debtors and the Creditors' Committee, preserving for the benefit of the Debtors' estates certain protections and privileges from disclosure of information and documents produced pursuant to the Joint Interest Agreement, and granting related relief; it appearing to the Court that (i) it has jurisdiction over the matters raised in the Motion pursuant to

---

[1] Terms not defined herein shall have the meanings ascribed to them in the Motion.

28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; (iv) proper and adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; and (v) upon the record herein after due deliberation thereon, that the relief should be granted as set forth below,

IT FURTHER APPEARING TO THE COURT THAT:

A. Although the Debtors and the Creditors' Committee are separate fiduciaries of these estates with distinct fiduciary duties, they share a common interest with respect to the subject matter of the Information (as defined herein). In addition, the Court as well as the Debtors and the Creditors' Committee have an interest in ensuring that its orders are implemented appropriately. In order to carry out their respective fiduciary duties efficiently and effectively in general, the Debtors and the Creditors' Committee must be able to share confidential information within the subject matter of the Information free from the risk that any of them would be required to divulge such information to third parties later.

B. Given the common interest of the Debtors and the Creditors' Committee with respect to the Information, the sharing of confidential information within the subject matter of the Information between the Debtors and the Creditors' Committee shall not prejudice any rights, remedies or causes of action of the Debtors

2

or the Creditors' Committee, including, but not limited to, any rights, remedies or causes of action against any member of the board of directors of the Debtors, professionals representing the board of directors, or the insurance companies that have issued directors and officers liability coverage that may be applicable with respect to any causes of action arising out of the Information.

  C. The Debtors have an interest in cooperating with the entities conducting and participating in the Investigations, including but not limited to, the Securities and Exchange Commission (the "SEC") and the United States Attorney's Office for the Eastern District of New York (the "USA EDNY").

  D. The Debtors' administration of their cases should not be prejudiced by the exchange of the Information. Any Information provided by the Debtors to the Creditors' Committee should be used only as provided in the Joint Interest Agreement.

IT IS HEREBY ORDERED:

  1. The Court hereby approves the Joint Interest Agreement, a copy of which is attached as <u>Exhibit A</u> hereto. Any information and documents provided by the Debtors to the Creditors' Committee shall be deemed confidential information subject to the provisions of the Joint Interest Agreement (the "Information"), and no attorney-client, attorney work-product doctrine, or similar privilege is being waived solely by reason of the sharing of such Information under the terms of the Joint

3

Interest Agreement. The Debtors' provision of Information pursuant to the Joint Interest Agreement will not confer upon any third party the right to obtain such Information, nor shall it limit the right of any party, including the Creditors' Committee, to Information that is otherwise discoverable to the extent so ordered by the Court or another Court of competent jurisdiction in litigation authorized by the Court.

2. Nothing in this Order shall preclude the Debtors from expressly waiving any privilege or attorney work-product doctrine applicable with respect to any Information in the future.

3. The Creditors' Committee may exercise its own independent judgment in determining whether to participate in particular meetings and interviews being conducted by the Debtors in furtherance of the Investigations.

4. Nothing in this Order or the Joint Interest Agreement limits, modifies or otherwise diminishes the Debtors' or the Creditors' Committee's rights and powers under applicable law, including the opportunity of the Creditors' Committee, to seek Information from the Debtors that the Debtors do not voluntarily produce (provided that all defenses the Debtors may have to any such involuntary production are not diminished by this Order or the Joint Interest Agreement).

5. Nothing in this Order or in the Joint Interest Agreement shall affect the separate representation of the parties by their respective counsel nor shall

anything be deemed hereto to create an attorney-client relationship between any attorney and anyone other than the client who hired that attorney. The Debtors' provision of Information pursuant to the Joint Interest Agreement shall not be a basis for disqualification of any of the Creditors' Committee counsel.

6. Pursuant to Federal Rule of Bankruptcy Procedure 2004, the Debtors are authorized to conduct examinations of any persons or entities on the subject matter of the Investigations; provided that the Debtors and the Creditors' Committee will cooperate and consult with one another with respect to discovery to be issued by the Debtors.

7. With respect to any discovery proposed in writing by the Creditors' Committee that the Debtors believe is objectionable or otherwise inappropriate, the Debtors shall timely meet and confer with the Creditors' Committee in good faith in an effort to resolve the dispute within ten (10) days of the Debtors' receipt of the proposed discovery. Following the meet and confer, if the matter is not resolved in a manner acceptable to the Committee, the Debtors may arrange a telephonic status conference before this Court pursuant to Section 105(d) of the Bankruptcy Code at which they will request the Court to resolve the matter. The conference shall be conducted in accordance with this Order and without further notice to any party in interest, except to the Creditors' Committee, which may participate in such conference. Unless a Protective Order is issued by the Court within seven (7) days of

receiving the Creditors' Committee's request, the Debtors shall issue the discovery requested. If the Debtors decline to issue such discovery at that time, the Creditors' Committee reserves its rights to seek the appropriate relief with respect to such denial.

8. The Fee Review Committee established in accordance with the Interim Compensation Order shall establish procedures for the disclosure and dissemination of time records kept by retained professionals which contain confidential, sensitive or privileged information concerning the Investigations (the "Confidential Time Records"). The dissemination and disclosure of the Confidential Time Records in accordance with the procedures established by the Fee Review Committee shall not constitute a waiver of the attorney-client or attorney work product privileges, or of any right to the confidentiality of such information by any party.

9. The Court expressly retains exclusive jurisdiction to determine any dispute regarding the interpretation or enforcement of this Order. On request of a party in interest, the Court may issue any order necessary or appropriate to enforce or give effect to the provisions of this Order, including, but not limited to, this retention of jurisdiction.

So Ordered in Savannah, Georgia this 28th day of April, 2005

_____
Honorable Lamar W. Davis, Jr.
United States Bankruptcy Judge

Order prepared by:

John Wm. Butler, Jr.
George N. Panagakis
Timothy P. Olson
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
(312) 407-0700

and

Kathleen Horne (Ga. Bar No. 367456)
Dolly Chisholm (Ga.. Bar No. 124922)
Matthew Mills (Ga. Bar No. 509718)
INGLESBY, FALLIGANT, HORNE, COURINGTON
 & CHISHOLM, A Professional Corporation
17 West McDonough Street, P.O. Box 1368
Savannah, Georgia 31402-1368
(912) 232-7000


Attorneys for Debtors and
 Debtors-in-Possession

Exhibit A

Joint Interest Agreement

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-40129 |
| | ) | |
| FRIEDMAN'S INC. et al., | ) | Chapter 11 |
| | ) | Jointly Administered |
| | ) | |
| | ) | Hon. Lamar W. Davis, Jr. |
| Debtors. | ) | |

## JOINT INTEREST AGREEMENT

1. On January 14, 2005 (the "Petition Date"), Friedman's, Inc. ("Friedman's") and seven of its subsidiaries and affiliates (collectively, the "Debtors" or the "Company") filed voluntary petitions under chapter 11 of Title 11 of the United States Code, 11 U.S.C.§§ 101, et seq, as amended (the "Bankruptcy Code") in this Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On January 24, 2005, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee"). No trustee or examiner has been appointed.

3. This Court has jurisdiction over this Joint Interest Agreement (the "Agreement") pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. Friedman's began in the 1920's as a small, family-owned jewelry retailer with its first store located in Savannah, Georgia. Today, Friedman's is a leading specialty jewelry retail company operating in power strip centers and regional malls. As of the Petition Date, Friedman's was the third largest jewelry chain in the industry, with more than 650 stores in 22 southeastern and midwestern states.

5. Prior to the commencement of these cases, Friedman's was the subject of formal and informal investigations (the "Investigations") commenced both on an internal basis and from third-parties, including the United States Attorney's Office for the Eastern District of New York (the "USA EDNY") and the Securities and Exchange Commission ("SEC").

6. As a result, Friedman's Board of Directors formed a Special Litigation Committee ("SLC") to provide oversight to the Company on the USA EDNY and SEC Investigations. The SLC is comprised of independent directors and retained White & Case LLP ("White & Case") as counsel. The Board of Directors also instructed the Audit Committee to continue the internal investigation. The Audit Committee retained Nixon Peabody LLP ("Nixon Peabody") as counsel.

7. Friedman's has advised the SEC and the USA EDNY of its independent investigation and that Friedman's intends to cooperate fully with the SEC and the USA EDNY.

2

8. The Company has determined that it will share material confidential information to the Creditors' Committee and consult with the Creditors' Committee regarding the Investigations. The Company and the Creditors' Committee believe that it is in the best interests of the Debtors' estates for Friedman's to disclose such confidential information related to the Investigations, whether written or oral, including by virtue of participation by any Reviewing Party (as defined below) in the Investigations ("Information") to the designees of the Creditors' Committee (which designees shall be the outside professionals of the Creditors' Committee and, at the election of the Creditors' Committee, either the chair of the committee or a subcommittee of the committee in a number reasonably acceptable to the Debtors) (the "Reviewing Parties"), in order to keep them adequately apprized of the ongoing progress of Friedman's Investigations, without losing any privilege or protection attaching to any produced information through the disclosure thereof.

9. Friedman's and the Creditors' Committee believe that they share common interests in this regard, and intend through this Agreement that any and all sharing of information pursuant to this Agreement be protected pursuant to the "common interest" or "joint defense" doctrine, to the fullest extent such protection is available under applicable case law subject to the provisions of this Agreement.

3

10. Friedman's and the Creditors' Committees wish to memorialize, and to set forth the terms and conditions, of their understanding with respect to the foregoing.

NOW, THEREFORE, IT IS HEREBY AGREED, by and between Friedman's and the Creditors' Committee, that:

A. Friedman's may voluntarily share Information related to the Investigations with the members and professionals of: the Official Committee of Unsecured Creditors on Appendix A to this Agreement (collectively, the "Reviewing Parties"). The Reviewing Parties shall treat all Information obtained from Friedman's in accordance with this Agreement. No other additional persons, firms, or entities shall be added to the Reviewing Parties list, unless prior email notice is provided to counsel for Friedman's. The Reviewing Parties may share and discuss Information with each other. The designated professional firms identified on Appendix A may disclose Information as necessary in the ordinary course of their work to legal assistants, secretaries, or other non-professional staff, but shall disclose information only to individuals who have a need to know the Information for purposes of participating in the Investigations.

B. Friedman's may voluntarily make available for inspection and copying by the Reviewing Parties certain Information, including deposition transcripts, internal memoranda, and other documents and information. At

4

Friedman's request, the Reviewing Parties shall return all originals and return copies of any and all Information produced pursuant to this Agreement, and shall certify their compliance with this paragraph to Friedman's in writing, provided that the professionals retained by the Creditors' Committee may retain (but must use for no other purpose other than as set forth in paragraph C) their own work product.

C. The Creditors' Committee may exercise its own independent judgment in determining whether to participate in particular meetings and interviews being conducted by the Debtors in furtherance of the Investigation, through its own representatives.

D. Nothing in this Agreements limits, modifies or otherwise diminishes the Debtors', the Creditors' Committees rights and powers under applicable law, including the opportunity of the Creditors' Committees to seek Information from the Debtors that the Debtors do not voluntarily produce (provided that all defenses the Debtors may have to any such involuntary production are not diminished by this Agreements).

E. Pursuant to Federal Rule of Bankruptcy Procedure 2004, the Debtors are authorized to conduct examinations of any persons or entities on the subject matter of the Investigations; provided that the Debtors and the Creditors' Committee will cooperate and consult with one another with respect to discovery to be issued by the Debtors. With respect to any discovery proposed in writing by the Creditors'

5

Committee that the Debtors believe is objectionable or otherwise inappropriate, the Debtors shall timely meet and confer with the Creditors' Committee in good faith in an effort to resolve the dispute within ten (10) days of the Debtors' receipt of the proposed discovery. Following the meet and confer, if the matter is not resolved in a manner acceptable to the Committee, the Debtors may arrange a telephonic status conference before this Court pursuant to Section 105(d) of the Bankruptcy Code at which they will request the Court to resolve the matter. The conference shall be conducted in accordance with this Order and without further notice to any party in interest, except to the Creditors' Committee, which may participate in such conference. Unless a Protective Order is issued by the Court within seven (7) days of receiving the Creditors' Committee's request, the Debtors shall issue the discovery requested. If the Debtors decline to issue such discovery at that time, the Creditors' Committee reserves its rights to seek the appropriate relief with respect to such denial.

F. All Information received by the Reviewing Parties in connection with the Investigations shall be held in strict confidence and used solely for purposes of the Investigation and any litigation subsequently authorized by the Bankruptcy Court. The Reviewing Parties shall not disclose the Information received in connection with the Investigations except to one another.

6

G. The parties agree that all Information provided to the Reviewing Parties prior to the execution of this Agreement was provided in furtherance of the parties' common interests and the prior provision of Information by Friedman's, and its receipt by the Reviewing Parties, is subject to this Agreement.

H. The Reviewing Parties will not assert that Friedman's production of Information pursuant to this Agreement constitutes a waiver of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection.

I. It is the express intent of the parties to this Agreement, and of the Bankruptcy Court, if it approves the Agreement, that the Agreement and the production of Information pursuant thereto will not confer upon any third party the right to obtain such Information, nor shall it limit the right of any party, including any Reviewing Party, to Information that is otherwise discoverable to the extent so ordered by the Bankruptcy Court or another court of competent jurisdiction in litigation authorized by the Bankruptcy Court.

J. Nothing herein shall, or is intended in any way to limit, modify or otherwise diminish Friedman's or the Creditors' Committee's rights and powers under applicable law, including under the Bankruptcy Code and Bankruptcy Rules, including the opportunity of the Creditors' Committees to seek Information from

7

Friedman's that Friedman's does not voluntarily produce (provided that all defenses that Friedman's may have to any such involuntary production are preserved).

K. Nothing herein shall or is intended to constitute an admission by any person or entity of any wrongdoing or liability or of the existence of any claims or causes of action in connection with the subject matter of the Investigations or otherwise.

L. This Agreement shall be binding upon the parties' respective successors and assigns.

M. This Agreement shall be submitted for approval by the Bankruptcy Court, but if not approved, shall remain in full force and effect as an agreement among the parties.

N. This Agreement may be executed in several counterparts, all of which constitute the same agreement.

O. Nothing herein shall affect the separate and independent representation of the parties by their respective counsel nor shall anything be deemed herein to create an attorney-client relationship between any attorney and anyone other than the client who hired that attorney. The sharing of information pursuant to this Agreement shall not be a basis for disqualification of any Reviewing Party's counsel.

8

P. This Agreement constitutes the full agreement among the parties regarding the production and sharing of Information. Modifications of this Agreement must be in writing and signed by counsel to all parties hereto.

Dated:      Savannah, Georgia
            April__, 2005

| | |
|---|---|
| John Wm. Butler, Jr. | Glenn B. Rice |
| George N. Panagakis | Scott L. Hazan |
| SKADDEN, ARPS, SLATE, | OTTERBOURG, STEINDLER, |
|   MEAGHER & FLOM LLP |   HOUSTON & ROSEN, P.C. |
| 333 West Wacker Drive | 230 Park Avenue, 29th Floor |
| Chicago, Illinois 60606-1285 | New York, New York 10169 |
| Tel:    (312) 407-0700 | |
| Fax:   (312) 407-0411 | Co-Counsel for The Official Committee of Unsecured Creditors |
| Attorneys for Debtors and Debtors-in-Possession | |

9

APPENDIX A

LIST OF REVIEWING PARTIES FOR
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

DESIGNATED COMMITTEE MEMBERS
(List Individuals and Firm Affiliations)

DESIGNATED PROFESSIONALS
(List Firms)