FRIEDMAN'S INC et.al.
Best Interests Analysis
($ in 000s)

**Note 7    Tradename rights, net**

Tradename rights are the costs capitalized for the "Friedman's Jewelers" rights, net of amortitzation. Friedman's also owns the rights to the phrase "The Value Leader". Crescent, for a fee, uses the phrase in its marketing and signage. It is management's opinon that the latter rights will have some residual value in the range of $50 to $100 thousand.

**Note 8    Receivable/Investment in Crescent**

The Receivable/Investment in Cresent is the remaining net book value of the loan and preferred stock investment in Crescent Jewelers, Inc. Crescent filed for protection under Chapter 11 on August 11, 2004 in the United States Bankruptcy Court for the Northern District of California. The recovery included for the purposes of this Analysis is based on proposals made and information provided by Crescent and/or its official committee of unsecured creditors in its Chapter 11 case as well as management's estimate of the ultimate recovery in Crescent's Chapter 11 case. The Debtors make no representations as to the accuracy of information provided by Crescent and/or its official committee of unsecured creditors. See the Disclosure Statement for the Debtors' affiliation with Crescent.

**Note 9    Recoveries from Avoidance Actions**

Debtors have identified certain pre-petition payments that might be subject to recovery in a Chapter 7 liquidation. This Best Interests Analysis assumes that a Chapter 7 trustee would seek to recover all such payments and they are listed in the following table. The schedule below shows management's estimate of recoveries, net of recovery expenses, that would be received after the beginning of Chapter 7 liquidation proceedings. It is anticipated that such recoveries will take place over approximately 2 years.

The outcome of any particular preference action is subject to a number of uncertainties. Moreover, the potential value of a preference action against a particular preference defendant ultimately is dependent upon the specific payment history and other facts and circumstances pertaining to that vendor and its relationship with the Debtors. It is therefore difficult to extrapolate generalized results for an entire class of preference claims from the individual circumstances of each case. The Debtors have not undertaken an exhaustive analysis of all potential preference claims in order to arrive at the estimates contained herein. Rather, the analysis undertaken by the Debtors for purposes of these estimates has been general in nature. The estimates contained herein therefore may be materially different from actual results achieved.

| Component | Pre-petition payments | Recovery Rate Lower | Recovery Rate Higher | Impact on Unsecured Creditor Recoveries Lower | Impact on Unsecured Creditor Recoveries Higher |
|---|---|---|---|---|---|
| Payments Made During Preference Period | $ 36,081 | 10% | 15% | $ 3,608 | $ 5,412 |

**Note 10    Other Litigation**

This analysis does not consider any benefits which might accrue to the Estate as a result of actions that a Chapter 7 trustee might pursue against former Directors, Lenders, or Individuals. See the Disclosure Statement for information concerning the Joint Review Investigation.

The accompanying notes are an integral part of the Best Interests Analysis

**FRIEDMAN'S INC et.al.**
**Best Interests Analysis**
($ in 000s)

Note 11    Chapter 7 and Chapter 11 Administrative Claims

Chapter 7 Administrative Claims include corporate and store operations wind-down costs, professional fees, and Chapter 7 trustee fees. Chapter 11 Administrative Claims include all remaining unpaid expenses and obligations of the Debtors incurred during the post-petition period through the conversion date to a Chapter 7 case.

It is assumed that the creditor recovery process occurs over a twelve-month period. For purposes of the Analysis, corporate operating expenses include the corporate office, including distribution, and store related expenses. A nearly full complement of corporate expenses is assumed to be required during the first three months, with declining amounts of corporate expenses required in the following months and as stores close during the period. It is assumed, further, that there will be an additional compensation program designed to retain key employees during the liquidation period. In this high recovery scenario, corporate expenses are assumed to be lower than in the low recovery scenario.

For the deconsolidated approach, the administrative expenses have generally been allocated on the basis of each Debtor's externally generated asset recovery proceeds. No allocation was given for proceeds from intercompany receivables.

| Chapter 7 Administrative Claims | Phase 1 1st 3 mos. | Phase 2 2nd 6 mos. | Phase 3 Final 3 mos. | Total |
|---|---|---|---|---|
| **Payroll Expense** | | | | |
| Total Store Operations | $ 1,018 $ | 509 $ | - $ | 1,527 |
| Total Merchandising / Distribution | 679 | 72 | - | 750 |
| Total Home Office | 2,804 | 2,483 | 843 | 6,130 |
| Total | $ 4,501 $ | 3,064 $ | 843 $ | 8,408 |
| **Retention Incentives** | | | | |
| Executives | $ 290 $ | - $ | 387 $ | 677 |
| Accounting / Finance & Treasury | - | 262 | 231 | 494 |
| All Other | - | 181 | 183 | 364 |
| Total | $ 290 $ | 444 $ | 801 $ | 1,535 |
| **Other Operating Expenses** | | | | |
| Total Store Operations | $ 356 $ | 178 $ | - $ | 534 |
| Total Merchandising / Distribution | 289 | 0 | - | 289 |
| Total Home Office | 2,673 | 3,721 | 1,147 | 7,541 |
| Total | $ 3,318 $ | 3,899 $ | 1,147 $ | 8,364 |
| Total Corporate Expenses (in high recovery scenario) | $ 8,110 $ | 7,406 $ | 2,791 $ | 18,307 |
| (in low recovery scenario) | $ 8,920 $ | 8,147 $ | 3,070 $ | 20,138 |

Professional fees include Debtor counsel costs for claims resolution and court filings and are anticipated to be incurred throughout each of the phases, reducing in Phase III. They also include the costs for the engagement of counsel for the prosecution of avoidance actions and costs for the claims and disburseing agent.

The Bankruptcy Court allows a Liquidating Trustee to a fee based on the proceeds derived from the liquidation of assets of the Debtors' Estate. For this Analysis an assumed rate of 3% of gross proceeds has been used. Such a rate is consistent with other cases in this filing District.

| | Recovery Lower | Recovery Higher |
|---|---|---|
| Estimated Proceeds | $ 131,431 | $ 173,012 |
| **Total Claims** | | |
| Corporate Expenses | $ 20,138 | $ 18,307 |
| Professional Fees | 5,474 | 4,977 |
| Trustee Fees @ 3% | 3,943 | 5,190 |
| Total Chapter 7 Administrative Claims | $ 29,555 | $ 28,474 |

**Chapter 11 Administrative Claims**

| | Total | Freidman's Inc. Lower | Freidman's Inc. Higher | FI Stores Lower | FI Stores Higher | FL Partnership Lower | FL Partnership Higher | FCJV Holding | Friedman's Beneficiary Inc. | Friedman's Holding Corp | Friedman's Investments | Friedman's Management Corp |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reclamation Claims | $ 512 $ | 327 $ | 343 $ | 144 $ | 131 $ | 41 $ | 38 $ | - $ | - $ | - $ | - $ | - |
| Trade accounts payable | 63,929 | 40,802 | 42,835 | 17,984 | 16,405 | 5,143 | 4,689 | - | - | - | - | - |
| Direct expense payable | 10,846 | 6,923 | 7,267 | 3,051 | 2,783 | 873 | 796 | - | - | - | - | - |
| Other Current Liabilities | 19,518 | 12,457 | 13,078 | 5,491 | 5,009 | 1,570 | 1,432 | - | - | - | - | - |
| KECP Severence Costs | 12,180 | 7,774 | 8,161 | 3,426 | 3,126 | 980 | 893 | | | | | |
| Total | $ 106,985 $ | 68,283 $ | 71,684 $ | 30,096 $ | 27,454 $ | 8,607 $ | 7,847 $ | - $ | - $ | - $ | - $ | - |

FRIEDMAN'S INC et.al.
Best Interests Analysis
($ in 000s)

**Note 12 Secured and Unsecured Claims**

**Secured Claims**

The Term DIP Lender claim includes the $25.5 million advance received from Harbert Distressed Investment Master Fund, Ltd. ("Harbert") as part of the $125 million Debtor-In-Possession financing agreement approved by the Bankruptcy Court on May 26, 2005, a $1.9 million claim purchased by Harbert from Jewelry Investors II LLC as part of an approved settlement between the Debtor and the former Term Lender, and the $99.5 million revolving loan from Citicorp USA, Inc.

The 1st Mortgage is held by General Electric Capital Business Asset Funding Corp and is secured by the Debtors' headquarters located at 171 Crossroads Parkway in Savannah, Georgia

Vendor 2nd Liens represent the claims of certain vendors who have entered into the Prepetition Trade Vendor Program and are secured by substantially all of the assets of the Debtors. The amounts associated with the liens arise from shipment of merchandise to the Debtors substantially during calendar 2004. Such liens are subordinate to those of the Revolving and Term DIP Lender Claims. For the deconsolidated approach, the Vendor 2nd Liens have generally been allocated to approximate the proceeds generated by each Debtor from the collateral encumbered by the Vendor 2nd Liens.

For convenience, professional fee claims are displayed with the secured claims because the professional fee claims are the only expenses entitled to be paid directly from the carve-out from the secured creditors' collateral before the payment of other administrative claims.

**Unsecured Claims**

Unsecured claims include Chapter 7 and Chapter 11 General Unsecured Claims:

| | Total | Freidman's Inc. Lower | Freidman's Inc. Higher | FI Stores Lower | FI Stores Higher | FL Partnership Lower | FL Partnership Higher | FCJV Holding | Friedman's Beneficiary Inc. | Friedman's Holding Corp | Friedman's Investments | Friedman's Management Corp |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **General Unsecured Claims** | | | | | | | | | | | | |
| Chapter 7 Lease rejection Claims | $ 23,223 | $ 15,273 | $ 15,273 | $ 5,881 | $ 5,881 | $ 2,070 | $ 2,070 | $ - | $ - | $ - | $ - | $ - |
| Scheduled Unsecured Claims | 34,177 | 34,000 | 34,000 | - | - | - | - | - | - | - | - | 176 |
| Chapter 11 Lease Rejection Claims | 7,291 | 4,964 | 4,964 | 1,568 | 1,568 | 759 | 759 | - | - | - | - | - |
| Unliquidated and Disputed Claims | 10,000 | 10,000 | 10,000 | - | - | - | - | - | - | - | - | - |
| Total | $ 74,691 | $ 64,237 | $ 64,237 | $ 7,449 | $ 7,449 | $ 2,829 | $ 2,829 | $ - | $ - | $ - | $ - | 176 |

**Note 13 Vendor Lien Program**

Both the substantive consolidation approach and the deconsolidated approach assume that the liens that secure repayment of obligations under the Prepetition Trade Vendor Program remain enforceable in accordance with their terms. In the context of a reorganization of the Debtors, the Court has already resolved this issue, finding that such liens are valid where the Debtors reorganize, pursuant to the order on the Motion to Authorize Debtors to Consent to Transfers of Participation Interests in Certain Secured Vendor Programs Claims, entered May 26, 2005 (Motion at Docket No. 595, Order at Docket No. 664).

In the event that a Chapter 7 trustee contests the vendor liens in the context of a liquidation, however, the issue has been reserved. If the liens are disputed, the Debtors believe that there will be substantially increased litigation and other expenses before any resolution of the issue. Without regard to the merits of any such litigation, in the event that the Chapter 7 trustee was successful in voiding those liens, then the proceeds allocated in the Best Interests Analysis to the vendor liens would instead potentially be available to pay claims of lesser priority (i.e., Chapter 7 and Chapter 11 administrative, priority and unsecured claims). It is management's opinion, however, that any such incremental proceeds would still be insufficient to provide any greater recovery to unsecured creditors, although the recovery available to pay Chapter 7 and Chapter 11 administrative claims would be enhanced.

# APPENDIX C

## PRO FORMA FINANCIAL PROJECTIONS



# Friedman's, Inc.

## Financial Projections

### Calendar Year 2005 through 2008
including Calendar Year 2004 unaudited, pro-forma financial results

*The pro-forma financial information for Calendar Year 2004 has been restated from previously issued financial statements. The restated results are based on managements' analysis of those adjustments which were deemed appropriate and necessary to reflect the Balance Sheet as of fiscal December 2004 and the results from operations and cash flows for the calendar year then ended. The results presented for 2004 as well as for January through May 2005 are unaudited, and are subject to change.*

*The financial projections contained herein are those of the management of the Company and have not been audited or reviewed by an independent accounting firm in accordance with standards promulgated by the American Institute of Certified Public Accountants (the "AICPA"). If such an examination were conducted, certain matters might have come to the attention of management that would have caused different results to be presented.*

*While management believes that these financial projections are reasonable, management can provide no assurance as to the ultimate accuracy of the realization of the results reflected in this report. Moreover, there will usually be differences between projected and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.*

Friedman's, Inc.
Financial Projections
Income Statement Projection
($ in thousands)

| | (Unaudited) Proforma Calendar 2004 | Proj Calendar 2005 | Proj Calendar 2006 | Proj Calendar 2007 | Proj Calendar 2008 |
|---|---|---|---|---|---|
| **Net Sales** | | | | | |
| Net Merchandise Sales | $ 415,017 | $ 350,789 | $ 363,990 | $ 380,243 | $ 399,071 |
| Diamond Bond & Gold Warrantees | 19,846 | 22,730 | 24,093 | 26,572 | 30,944 |
| **Total Net Sales** | 434,863 | 373,520 | 388,083 | 406,815 | 430,015 |
| **Operating Expenses** | | | | | |
| **Cost of Goods Sold** | | | | | |
| Merchandise | 212,988 | 178,439 | 188,117 | 196,567 | 206,098 |
| UNICAP | 1,041 | 0 | - | - | - |
| Shrink | 5,924 | 4,147 | 3,500 | 2,925 | 2,304 |
| Freight Out | 1,540 | 1,766 | 1,594 | 1,674 | 1,758 |
| Merchandise | 221,493 | 184,351 | 193,210 | 201,167 | 210,160 |
| Distribution / Merchandising Payroll | 3,233 | 3,871 | 4,081 | 4,203 | 4,329 |
| Occupancy | 32,700 | 26,973 | 25,426 | 25,558 | 25,941 |
| **Total COGS** | 257,426 | 215,195 | 222,718 | 230,928 | 240,430 |
| Gross Margin | 177,437 | 158,324 | 165,365 | 175,887 | 189,584 |
| *Gross Margin %* | *40.80%* | *42.39%* | *42.61%* | *43.24%* | *44.09%* |
| **Selling, General & Administrative** | | | | | |
| Salaries | 110,481 | 85,899 | 84,526 | 86,455 | 89,049 |
| Advertising | 30,777 | 25,166 | 26,043 | 26,824 | 27,629 |
| Other Direct | 45,681 | 35,211 | 30,523 | 31,175 | 32,047 |
| **Total SG&A** | 186,939 | 146,276 | 141,092 | 144,455 | 148,725 |
| **Credit Operations** | | | | | |
| Provision for Bad Debt | 68,836 | 31,243 | 33,228 | 35,831 | 37,567 |
| Finance Charge and Other | (49,537) | (26,387) | (29,904) | (32,547) | (33,449) |
| **Total Credit Operations** | 19,299 | 4,856 | 3,325 | 3,284 | 4,118 |
| **Total SG&A and Credit Operations** | 206,238 | 151,132 | 144,416 | 147,739 | 152,843 |
| **Total Operating Expenses** | 463,664 | 366,327 | 367,134 | 378,667 | 393,273 |
| **EBITDAIR** | (28,801) | 7,192 | 20,949 | 28,148 | 36,742 |
| Store Closing Costs | 5,642 | 27,475 | 6,941 | - | - |
| Investigation and Restructuring Fees | 31,443 | 38,628 | 1,000 | - | - |
| **EBITDA** | (65,886) | (58,911) | 13,008 | 28,148 | 36,742 |
| Depreciation & Amortization | 12,822 | 14,836 | 4,921 | 5,503 | 6,244 |
| **Income from Operations** | (78,708) | (73,747) | 8,087 | 22,646 | 30,497 |
| Interest & Other Fees | 11,859 | 5,486 | 7,569 | 8,141 | 8,111 |
| Loss on writedown of assets | 13,712 | - | - | - | - |
| Litigation Contingency | 9,300 | - | - | - | - |
| Other Income Taxes Expense | - | 1,449 | 2,484 | 2,484 | 2,484 |
| **Net Income / (Loss) before Taxes** | (113,579) | (80,682) | (1,966) | 12,021 | 19,903 |
| Income Tax Provision | 14,803 | 28,711 | 698 | (4,268) | (7,066) |
| **Net Income / (Loss)** | $ (98,776) | $ (51,971) | $ (1,268) | $ 7,754 | $ 12,837 |

Friedman's, Inc.
Financial Projections
Balance Sheet Analysis
($ in thousands)

| | (Unaudited) Proforma Calendar 2004 | Proj Calendar 2005 | Proj Calendar 2006 | Proj Calendar 2007 | Proj Calendar 2008 |
|---|---|---|---|---|---|
| **Current Assets:** | | | | | |
| Cash and cash equivalents | $ 630 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |
| Restricted Sales Tax Account | - | - | - | - | - |
| Accounts Receivable, net | 101,843 | 84,329 | 99,050 | 107,757 | 115,268 |
| Net Inventories | 113,318 | 85,240 | 102,230 | 110,553 | 113,661 |
| Deferred income taxes | - | - | - | - | - |
| Other current assets | 4,606 | 9,310 | 9,310 | 9,310 | 9,310 |
| Total Current Assets | 220,396 | 183,879 | 215,590 | 232,620 | 243,239 |
| Net property, equipment and improvements | 23,477 | 19,538 | 20,886 | 23,322 | 24,984 |
| Other long term assets | 24,830 | 53,358 | 54,056 | 49,788 | 42,723 |
| Tradename rights, net | 5,022 | 5,022 | 5,022 | 5,022 | 5,022 |
| Receivable/Investment in CJ | - | - | - | - | - |
| **Total Assets** | $ 273,725 | $ 261,797 | $ 295,554 | $ 310,752 | $ 315,948 |
| **Liabilities** | | | | | |
| **Current liabilities:** | | | | | |
| Trade accounts payable - Post-Petition | $ 52,446 | $ 36,475 | $ 38,592 | $ 39,777 | $ 43,542 |
| Direct expense payable - Post-Petition | 22,375 | 14,087 | 10,756 | 11,245 | 10,997 |
| Vendor Agreements Payable | 22,107 | - | - | - | - |
| Fiduciary Sales Taxes Payable | 4,565 | 8,076 | 8,530 | 8,927 | 9,343 |
| Other Current Liabilities | 36,980 | 19,071 | 19,145 | 19,344 | 21,234 |
| Total current liabilities | 138,473 | 77,708 | 77,024 | 79,293 | 85,116 |
| Liabilities Subject to Compromise | - | 120,681 | 125,109 | 125,109 | 125,109 |
| **Long term Liabilities:** | | | | | |
| Bank of America credit line | 0 | - | - | - | - |
| Traunche B Loan | 62,581 | - | - | - | - |
| Debtor In Possession Financing | - | 17,504 | 48,901 | 54,197 | 40,860 |
| Junior DIP Term Financing | - | 25,500 | 25,500 | 25,500 | 25,500 |
| Mortgage | 3,371 | 3,261 | 3,146 | 3,025 | 2,898 |
| Deferred income taxes and other | - | (214) | (214) | (214) | (214) |
| Total long term liabilities | 65,952 | 46,051 | 77,333 | 82,508 | 69,045 |
| **Total liabilities** | 204,425 | 244,441 | 279,466 | 286,910 | 279,269 |
| **Shareholders' equity (deficit):** | | | | | |
| Class A Common stock, par value $.01, 40,000,000 authorized, 20,787,284 issued and outstanding | 207 | 207 | 207 | 207 | 207 |
| Class B Common stock, par value $.01, 7,000,000 authorized, 1,196,283 issued and outstanding | 12 | 12 | 12 | 12 | 12 |
| Additional paid-in capital | 203,827 | 203,827 | 203,827 | 203,827 | 203,827 |
| Retained earnings | | | | | |
| Beginning Retained Earnings | (35,779) | (134,555) | (186,526) | (187,794) | (180,040) |
| Period Income / (Loss) | (98,776) | (51,971) | (1,268) | 7,754 | 12,837 |
| Ending Retained Earnings | (134,555) | (186,526) | (187,794) | (180,040) | (167,203) |
| Shareholder notes receivable | (191) | (165) | (165) | (165) | (165) |
| Total shareholders' equity (deficit) | 69,301 | 17,356 | 16,088 | 23,842 | 36,679 |
| **Total liabilities and equity** | $ 273,726 | $ 261,797 | $ 295,554 | $ 310,752 | $ 315,948 |

Friedman's, Inc.
Financial Projections
GAAP Cash Flow Projections
($ in thousands)

| | (Unaudited) Proforma Calendar 2004 | Proj Calendar 2005 | Proj Calendar 2006 | Proj Calendar 2007 | Proj Calendar 2008 |
|---|---|---|---|---|---|
| **Net Income** | $ (98,776) | $ (51,971) | $ (1,268) | $ 7,754 | $ 12,837 |
| Less: Loss on Disposal of Assets | 12,951 | - | - | - | - |
| Less: Depreciation & Amortization | 12,822 | 14,836 | 4,921 | 5,503 | 6,244 |
| Net income less non-cash charges | (73,003) | (37,135) | 3,653 | 13,256 | 19,082 |
| **Cash Flow from Operations** | | | | | |
| Change in Net A/R | 57,129 | 17,514 | (14,721) | (8,707) | (7,512) |
| Change in Net Inventory | 23,685 | 28,078 | (16,990) | (8,323) | (3,108) |
| Change in Deferred Income Tax | - | (4,087) | (698) | 4,268 | 7,066 |
| Change in Other Current Assets | (979) | (6,642) | - | - | - |
| Change in Other Long Term Assets | (12,582) | (22,503) | - | - | - |
| Change in Accounts Payable | (6,748) | 50,294 | (1,214) | 1,674 | 3,517 |
| Change in Vendor Agreements Payable | 22,107 | (4,443) | - | - | - |
| Change in Other Current Liabilities | 8,321 | 10,554 | 4,502 | 199 | 1,890 |
| Change in Shareholder Note Receivable | 856 | 27 | - | - | - |
| Change in Other Tax Liability | - | (214) | - | - | - |
| Change in Sales Tax Liability | (5,461) | 3,511 | 455 | 396 | 416 |
| **Net Cash Flow from Operations** | 86,328 | 72,089 | (28,666) | (10,493) | 2,269 |
| **Cash from Investing Activities** | | | | | |
| Capital Expenditures & Loss on Disposition | (6,445) | (10,897) | (6,269) | (7,938) | (7,887) |
| **Net Cash from Investing Activities** | (6,445) | (10,897) | (6,269) | (7,938) | (7,887) |
| **Cash from Financing Activities** | | | | | |
| Change in Mortgage | (104) | (109) | (115) | (121) | (127) |
| Borrow / (Repay) BofA Revolver | (0) | 0 | - | - | - |
| Borrow / (Repay) Farallon Term Loan | (16,218) | (62,581) | - | - | - |
| Borrow / (Repay) DIP Loan | - | 17,504 | 31,397 | 5,296 | (13,337) |
| Borrow / (Repay) DIP Term B | - | 25,500 | - | - | - |
| Borrow / (Repay) Exit Revolver | - | - | - | - | - |
| Borrow / (Repay) Exit Term | - | - | - | - | - |
| Change in Corporate Equity | 4,689 | - | - | - | - |
| **Net Cash Flow from Financing Activities** | (11,633) | (19,687) | 31,282 | 5,175 | (13,464) |
| Net Change in Cash Position | (4,753) | 4,370 | - | - | - |
| Beginning Cash | 5,383 | 630 | 5,000 | 5,000 | 5,000 |
| Ending Cash Balance | $ 630 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |

Page 4 of 4

# APPENDIX D

## REORGANIZATION VALUATION ANALYSIS

1

# APPENDIX D

## REORGANIZATION VALUATION ANALYSIS

Jefferies & Co., Inc. (the "Jefferies") has advised the Debtors with respect to the value of the Reorganized Debtors.

For purposes of the Plan, the reorganization value (the "Reorganization Value") of the Reorganized Debtors is estimated to range from approximately $125 million to $155 million, with a mid-point of approximately $140 million. The Reorganization Value assumes an effective date (the "Effective Date") of December 31, 2005 and reflects the going concern value of the Debtors after giving effect to the implementation of the Plan. The Reorganization Value does not include excess cash, if any, remaining in the Reorganized Debtors after taking into account cash distributions required under the Plan. The Debtors are of the view that such excess cash, if any, is necessary to run the business and, therefore, should not be viewed as excess cash for valuation purposes. The Reorganization Value also does not include the Debtors' interests in Crescent Jewelers, the value (positive or negative) of any possible tax refund or net operating losses, or the value from any possible monetization of its credit portfolio.

The equity value (the "Implied Equity Value") of the Reorganized Debtors is estimated to range from approximately $58.8 million to $88.8 million. The Implied Equity Value reflects the difference between the Reorganization Value and the total amount of secured and priority claims that must be satisfied in connection with emergence from Chapter 11, not including the amount of the term loan sub-facility of the debtor-in-possession financing facility which is assumed to be converted to equity under the Plan. However, the assumed amount of such sub-facility for purposes of such conversion is approximately $28.3 million. When this value is deducted from the Implied Equity Value, the amount of such Implied Equity Value remaining for pre-petition creditors of the Debtors is between $30.5 million and $60.5 million.

Jefferies assisted the Debtors in arriving at the Reorganization Value. In doing so, Jefferies has assumed and relied on the accuracy and completeness of certain unaudited projections prepared by the Debtors of the Debtors' results of operations, cash flow and related balance sheets (the "Projections"). The Projections reflect numerous assumptions, including assumptions with respect to the future performance of the Reorganized Debtors, the performance of the industry, general business and economic conditions and other matters, most of which are beyond the Debtors' control. Numerous factors may affect the future financial performance of the Reorganized Debtors and the accuracy of the Projections. Therefore, the actual results achieved during the projection period will vary from the projected results, and may vary substantially. Indeed, and without limiting the foregoing, Section VI.H. of the

Disclosure Statement describes that the professional fees assumed in the projections may be reduced in accordance with fee accommodations and/or alternative fee arrangements reached with various professionals which, to the extent realized, may result in an increase in the Reorganization Value. No representations can be or are being made with respect to the accuracy of the Projections, or the ability of the Reorganized Debtors to achieve the projected results.

In arriving at the Reorganization Value, Jefferies performed certain quantitative analyses and made determinations as to the most appropriate and relevant methods of financial and comparative analysis and the application of those methods to the particular circumstances of the Reorganized Debtors. Jefferies assigned relative weights to various analyses and factors and also made qualitative judgments as to the significance and relevance of each analysis and factor based on the Debtors' circumstances, including their operating performance.

**Set forth below is a summary of the material financial analyses performed by Jefferies in estimating the value of the Reorganized Debtors.**

1. Comparable Public Company Analysis

In a comparable public company analysis, a subject company is valued by comparing it to publicly held companies in reasonably similar lines of business. The comparable public companies are chosen based on, among other attributes, their similarity to the subject company's business, presence in the market and size. The price that investors are willing to pay in the public markets for each company's publicly traded securities represents that company's current and future prospects as well as the rate of return required on the investment.

The analytical work performed includes, among other things, a detailed financial comparison of selected metrics from each company's financial statements. Numerous financial multiples and ratios were developed to measure each company's valuation and relative performance. Some of the specific analyses entailed comparing the enterprise value (defined as market value of equity plus debt minus excess cash) for each of the comparable public companies to their sales, EBITDAR (defined as EBITDA plus rent expenses) and EBITDA (defined as earnings before interest, taxes, depreciation and amortization). Where appropriate, Jefferies applied these multiples to the relevant selected financials of the Reorganized Debtors to determine an implied range of enterprise and equity values for the Reorganized Debtors.

2. Discounted Cash Flow Analysis

The second valuation methodology used to value the Reorganized Debtors was the discounted cash flow method. The discounted cash flow method relates the value of an asset or business to the present value of expected future cash flows to be generated by that asset or business. The discounted cash flow method is a forward-looking approach that discounts the

expected future cash flows by a theoretical or observed discount rate. The Reorganized Debtors' projected cash flows were discounted to a present value as of the Effective Date using a discount rate equal to the estimated weighted average cost of capital for the Reorganized Debtors. For purposes of the valuation analysis, Jefferies used a range of discount rates which reflects a number of company and market specific factors, including business execution risk and the nature and derivation of the projections set forth in the Business Plan as well as the cost of equity for companies that Jefferies deemed comparable.

3. Precedent Transaction Analysis

The third valuation methodology used to estimate the value of the Reorganized Debtors is the Precedent Transaction analysis. The comparable acquisition analysis entails calculating multiples of revenues and EBITDA based on prices paid (including any debt assumed and equity purchased) in announced mergers and acquisitions involving companies viewed to be similar to the Reorganized Debtors. These multiples were then applied, where deemed relevant, to the projected financials of the Reorganized Debtors to determine an implied range of enterprise values.

In connection with their analysis of the value of the Reorganized Debtors, Jefferies (i) reviewed certain historical financial information of the Debtors, (ii) reviewed the Projections and the assumptions underlying them, (iii) reviewed certain internal financial and operating data of the Debtors, (iv) met with certain members of management to discuss the Debtors' operations and future prospects (including the operational changes contemplated by the Business Plan), (v) reviewed publicly available financial data and (vi) considered certain economic and industry information relevant to the Debtors' operating business and conducted such other analyses as Jefferies deemed appropriate.

As noted above, Jefferies assumed and relied on the accuracy and completeness of all financial and other information that was provided to or discussed with it by the Debtors as well as publicly available information, and did not assume any responsibility for independently verifying this information. Jefferies also assumed that all financial information and analysis (including the financial projections and forecasts) provided by the Debtors was prepared in good faith and on bases reflecting the best currently available judgments and estimates of management of the Debtors.

Jefferies has not expressed and is not expressing any opinion with respect to the financial information, analyses and forecasts provided by the Debtors or the assumptions on which they are based.

In addition, Jefferies has not made or or obtained an independent valuation or appraisal of the assets or liabilities of the Reorganized Debtors, and no such independent valuation or appraisal was provided to Jefferies in connection with the valuation analysis.

The valuation analysis prepared by Jefferies is based on economic and market conditions as they existed and could be evaluated as of July 21, 2005. The Reorganization Value represents a hypothetical going-concern value for the Reorganized Debtors. It was calculated solely for the purpose of determining value available for distribution to creditors under the Plan and evaluating whether the Plan satisfied the "best interests test" under 1129(a)(7) of the Bankruptcy Code as well as establishing a reasonable estimate of the initial stockholders' equity for fresh-start accounting. The Reorganization Value does not purport to reflect or constitute an appraisal, a liquidation value or an estimate of the actual market value that may be realized through the sale of any securities to be issued pursuant to the Plan. The value of the Debtors' business is subject to uncertainties and contingencies that are difficult to predict. Consequently, the Reorganization Value is not necessarily indicative of any actual value, which may be significantly more or less favorable than the value set forth herein.

Additionally, the valuation of newly-issued securities is subject to additional uncertainties and contingencies, all of which are difficult to predict. Actual market prices of such securities at issuance will depend upon, among other things, conditions in the financial markets, the anticipated initial securities holdings of pre-petition creditors, some of which may prefer to liquidate their investment rather than hold it on a long-term basis, and other factors that generally influence the prices of securities. Actual market prices of such securities also may be affected by the Debtors' history in Chapter 11, conditions affecting the Debtors' competitors or the industry generally in which the Debtors participate or by other factors not possible to predict. Accordingly, the Reorganization Value does not necessarily reflect, and should not be construed as reflecting, any value that will be attained in the public or private markets. Finally, the Equity Value shown herein is based on the Reorganized Debtors' assumption regarding their capitalization on the Effective Date.

The valuation set forth herein reflects the assumption that the operating results anticipated by management and reflected in the Business Plan can be achieved in all material respects, including comparable store sales growth and income improvement. To the extent that the valuation is dependent on the Debtors' achievement of the projections contained in the Disclosure Statement, the valuation should be considered speculative. The valuation also assumes (i) a successful and timely reorganization of the Debtors' capital structure, (ii) the Plan becoming effective in accordance with its proposed terms and (iii) the continuity of the present operating management of the Debtors following consummation of the Plan.

Because of the uncertainties discussed herein, neither Jefferies nor the Debtors assumes any responsibility for the accuracy of the valuation estimate.

4