# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

FILED at 2 O'clock & 39 min P M
Date 12/15/05

United States Bankruptcy Court
Savannah, Georgia

In the matter of: )
) Chapter 11 Case
FRIEDMAN'S, INC., et al., ) Jointly Administered
)
       *Debtors* ) Number 05-40129

### ORDER ON MOTIONS TO COMPEL DISCOVERY
### AND FOR PROTECTIVE ORDER FILED RESPECTIVELY
### BY FRIEDMAN'S, INC., ET AL. AND ERNST & YOUNG LLP

On October 21, 2005, Friedman's, Inc., et al. ("Friedman's") and Ernst & Young LLP ("E&Y") filed their cross-Motions to Compel Discovery and for Protective Order (the "October 21 Motions"). The October 21 Motions concern subpoenas for the production of documents issued at the request of Friedman's in the Northern District of Georgia as well as the proceedings before the United States Bankruptcy Court for the Northern District of Georgia arising out of E&Y's effort to quash the subpoenas or seek a protective order against the discovery. By order dated October 11, 2005, the Honorable Ray Mullins, Judge of that Court, denied the respective motions of the parties and included in his order the finding that it was appropriate for this Court to be the forum in which the discovery dispute between the parties should be resolved. Accordingly, the October 21 Motions were filed in this Court and came on for a hearing on November 3, 2005.

AO 72A
(Rev. 8/82)

## *SUBJECT MATTER JURISDICTION*

At the outset, E&Y raised the issue of whether this Court lacked subject matter jurisdiction to entertain the October 21 Motions. It argued that the provisions of Bankruptcy Rule 9016, which incorporates Federal Rule of Civil Procedure 45, permit only the issuing Court to quash, modify, or enforce a subpoena.

According to E&Y, four circuit courts have addressed the issue of whether the court issuing a subpoena may transfer to the court in which the litigation is pending the authority to enforce or modify such subpoenas. Two cases recognize such a power to transfer. In <u>In re Digital Equipment Corp.</u>, 949 F.2d 228, 231 (8th Cir. 1991), the court held that *absent* a transfer from the subpoena-issuing court to a trial court, the trial court lacked jurisdiction to rule on the contesting parties' objections, including their claims of privilege. In <u>Peterson v. Douglas County Bank & Trust Co.</u>, 940 F.2d 1389, 1391-92 (10th Cir. 1991), the court concluded that a magistrate who transferred a motion to quash from the issuing court to a trial court acted within his authority. Two courts have qualified that power to transfer. In <u>In re Orthopedic Bone Screw Products Liability Litigation</u>, 79 F.3d 46, 48-49 (7th Cir. 1996), the Seventh Circuit found that there was no authority to transfer a motion for decision elsewhere but that the court which issued the subpoena was free to stay its local proceedings and abide by the decision of the trial court if it chose to do so. Finally, in <u>In re Sealed Case</u>, 141 F.3d 337, 341-42 (D.C. Cir. 1998), the District of Columbia Court of Appeals analyzed the question thoroughly and concluded that the court for the district where

a deposition is to be taken may stay its action on the motion, permit the opponent to make a motion for a protective order in the court where the trial is to take place, and then defer to the trial court's decision.

Sealed Case also sheds light on the jurisdictional issue in its finding that "a nonparty that moves for a protective order in the court of the underlying action thereby submits to that court's jurisdiction." 141 F.3d at 342. Based on the authority of Orthopedic Bone Screw and Sealed Case, I conclude that this Court has subject matter jurisdiction and is the proper venue for the resolution of this matter. Judge Mullins denied motions similar to the ones before me and made a specific finding that the issues should be decided here. Even if this is not the functional equivalent of an order to transfer the case here, Judge Mullins's order certainly meets the standards of the latter two cases in deferring action and allowing the parties to seek relief in the trial court. Furthermore, Sealed Case found that since the party moving for a protective order submits to that court's jurisdiction and thereby waives any jurisdictional defense, there can be no lack of subject matter jurisdiction. Subject matter jurisdiction cannot be conferred on a court by the parties. Therefore, if the moving party is deemed to have waived the jurisdictional defense or is deemed to submit to this Court's jurisdiction by filing a motion here, it can only be held to have waived venue or *in personam* jurisdiction. I therefore overruled the subject matter jurisdiction defense and reaffirm that ruling in this order.

## *ARBITRATION CLAUSE*

E&Y also argued that an arbitration clause in the agreement between the parties requires that all disputes and discovery disputes between Friedman's and E&Y be handled through mediation and mandatory arbitration. Resolving this issue requires an examination of the Joint Interest Agreement between the Creditors' Committee and Friedman's and this Court's order that approved that agreement (the "Order"). In essence, the Joint Interest Agreement allows Rule 2004 examinations with regard to investigations so as to permit discovery on the "subject matter of the investigations." Order, p. 5 (April 28, 2005)(Dckt. No. 585). The term "investigations" is a defined term in Friedman's motion seeking approval of the Joint Interest Agreement (the "Joint Interest Agreement Motion"), the Joint Interest Agreement, and the Order. The definition includes, but is not limited to, formal and informal investigations begun pre-petition by the Securities and Exchange Commission and the Department of Justice. This definition also includes investigations into accounting irregularities, transactions between Friedman's and Crescent Jewelers and Morgan Schiff, as well as issues arising out of Friedman's announcement that it would have to restate earnings for a number of years in the pre-petition period. Friedman's Board of Directors had already formed a special litigation committee pre-petition that was looking into these as well as other matters, and the Joint Interest Agreement was intended to continue that process. Order, Exh. A, p. 2 (April 28, 2005)(Dckt. No. 585).

Against that backdrop, Friedman's filed the Joint Interest Agreement Motion on April 8, 2005. The Court entered the Order on April 28, 2005, which provided on page 6 in part:

> The Court expressly retains exclusive jurisdiction to determine any dispute regarding the interpretation or enforcement of this Order. On request of a party in interest, the Court may issue any order necessary or appropriate to enforce or give effect to the provisions of this Order, including, but not limited to, this retention of jurisdiction.

This reservation of jurisdiction must be contrasted with the arbitration clause relied upon by E&Y. On September 30, 1999, E&Y addressed a letter to Friedman's that confirmed E&Y's engagement to audit and report on the consolidated financial statements of Friedman's, among other things. Paragraph 14 of that letter states that "[a]ny controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by us to the Company (Friedman's) . . . shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to this letter." Joint Motion of Ernst & Young LLP and Friedman's, Inc., Et Al. to Submit to This Court Cross-Motions for a Protective Order and to Compel, Exh. 1 to Dec. of Stephen Schuetz, Exh. A (October 21, 2005)(Dckt. No. 1180). The letter's attachment provides that "[n]o discovery will be permitted in connection with *the arbitration* unless it is expressly authorized by *the arbitration panel* upon a showing

of substantial need by the party seeking discovery." Id. (emphasis added). Mediation and subsequent arbitration, however, is not triggered until the dispute is "submitted to mediation by written notice to the other party or parties." The dispute resolution procedures contemplate a ninety-day mediation period followed by arbitration if the matter is not resolved.

Arbitration agreements are generally favored and have been enforced in bankruptcy courts. See <u>Durango Georgia Converting, LLC v. TST Impreso, Inc. (In re Durango Georgia Paper Co.)</u>, 309 B.R. 394, 401 (Bankr. S.D. Ga. 2004). However, I find that the arbitration clause and dispute resolution procedures contemplated by E&Y's September 30, 1999 letter do not eclipse this Court's jurisdiction to rule on the October 21 Motions. First, at this point in the case, no "controversy or claim" has been submitted to mediation or arbitration pursuant to any written notice from either E&Y or Friedman's. Indeed, there may never be such a dispute. There is no pending arbitration and no panel to whom any discovery dispute could be submitted. What is underway at this point is Friedman's and the Creditors' Committee investigations into a number of transactions and occurrences in which E&Y was an active participant, since it provided accounting and auditing services to Friedman's and other related parties. Those investigations are considered critical to Friedman's, the Creditors' Committee, and ultimately the bankruptcy estate in determining whether there are litigation claims that can be pursued for the benefit of unsecured creditors. Although the investigations may reveal that there is a claim directly

against E&Y that can be asserted by the estate, that determination has not yet been made and has not been submitted to mediation or arbitration. Accordingly, the arbitration clause and dispute resolution procedures simply have not been triggered because there is no identifiable, discrete dispute between the parties that could be argued to control the scope of discovery.

Second, much, if not all, of the discovery sought by Friedman's is discoverable under the Joint Interest Agreement regardless of whether there ever is a claim against E&Y. Friedman's is entitled to appropriate relief to compel appropriate discovery in a Rule 2004 examination and the production of documents to the extent they are within the scope of the Joint Interest Agreement and not otherwise protected from disclosure. The fact that Friedman's or the Creditors' Committee might learn from this discovery process that there are potential claims against E&Y does not and cannot result in a finding by this Court that the arbitration clause may be used to prohibit reasonable discovery under Rule 2004 by litigants in a bankruptcy forum.

In support of its position, E&Y relies heavily on Ernst & Young, LLP v. Pritchard (In re Daisytek, Inc.), 323 B.R. 180 (N.D. Tex. 2005). In that case, the bankruptcy court determined that arbitration clauses in engagement agreements between E&Y and the debtor did not apply to limit a request for a Rule 2004 examination. That court concluded that the arbitration clauses did not apply because they pertained to controversies and claims related to E&Y's services, and there was then no such controversy or claim. The district

court disagreed with the bankruptcy court's reasoning. It cited a Fifth Circuit Court of Appeals opinion for the proposition that when determining whether a matter in bankruptcy must be submitted to arbitration, a bankruptcy court must look to the nature of the underlying procedure. Id. at 187 (citing In re Nat'l Gypsum Co., 118 F.3d 1056 (5th Cir. 1997)).

There were at least two types of claims that the Trustee in Daisytek sought to develop. First, the Trustee sought to investigate the possibility of bringing state law audit malpractice claims based on E&Y's pre-petition conduct as the debtor's auditor. Second, the Trustee sought to discover whether he could pursue actions for preferential or fraudulent transfers, which derive exclusively from the Bankruptcy Code. As a result, the district court concluded that as to those claims arising from state law, the court had to give effect to the arbitration clauses. In re Daisytek, 323 B.R. at 188. As to those claims arising under the Bankruptcy Code, the court could in its discretion refuse to enforce the clauses if they would conflict with the Code's purposes. Id.

Although Daisytek is persuasive and helpful, this Court respectfully declines to follow the rationale of this non-binding decision. Daisytek relied primarily on two Fifth Circuit opinions to reach its conclusion. Neither In re National Gypsum Co., 118 F.3d 1056 (5th Cir. 1997) nor In re Gandy, 299 F.3d 489 (5th Cir. 2002) involved the situation in the present case, in which the party seeking discovery does not yet know the full extent of any claims it may have. In both Fifth Circuit cases, the court addressed facts in which the parties

were contesting identified and specific causes of action. In this case, Friedman's has not identified a specific cause of action that is the source of its request for Rule 2004 examination. To follow Daisytek in these circumstances would defeat a fundamental purpose of Rule 2004, which is to grant debtors like Friedman's a broad power to determine what causes of action they may possess. *See* Moore v. Eason (In re Bazemore), 216 B.R. 1020, 1023 (Bankr. S.D. Ga. 1998)(Dalis, J.)(noting that the scope of a Rule 2004 examination is "unfettered and broad" and has been compared to a "fishing expedition")(citations omitted); In re Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)("The purpose of such a broad discovery tool (Rule 2004) is to assist the trustee in revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed.").

At this point in the present case, there is no way to determine where the investigations will lead, what claims may be revealed, and what issues are core and non-core. Until more is known, it is impossible to know whether to limit discovery or split the causes of action between arbitrable and non-arbitrable actions. To prospectively shut down any meaningful investigation would be fundamentally at odds with bankruptcy policy and severely damage the interests of unsecured creditors. *See* In re Nat'l Gypsum, 118 F.3d at 1069 (stating that the purpose of the Bankruptcy Code includes the "goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own

orders"). Friedman's Plan of Reorganization has been confirmed. Among its provisions is the creation of an $8 million dollar fund to investigate and pursue claims of all types and description. First Amended Joint Plan of Reorganization of Friedman's, Inc. and Certain Affiliates, Debtors and Debtors-in-Possession, ¶ 11.2(a) (September 20, 2005)(Dckt. No. 1042). Unsecured creditors will receive nothing under the Plan other than a pro rata share of the recoveries from these trust claims. They voted overwhelmingly to accept this Plan provision with the reasonable expectation that these claims would be professionally and aggressively pursued to the full extent of the Order approving the Joint Interest Agreement and its authorization to employ the full powers available under Rule 2004.

Finally, I respectfully disagree with the interpretation by Daisytek of the phrase "controversy or claim" in the arbitration clauses. According to the district court in Daisytek, to the extent the bankruptcy court suggested the clauses afforded no protection to E&Y because no formal arbitration proceedings had yet commenced, "its interpretation appears to misread the clauses, and it should reconsider this interpretation if it is material to its decision on remand." 323 B.R. at 188 n.8. The plain language of the engagement letter between E&Y and Friedman's states that mediation and arbitration will be used to resolve any "controversy or claim." Joint Motion of Ernst & Young LLP and Friedman's, Inc., Et Al. to Submit to This Court Cross-Motions for a Protective Order and to Compel, Exh. 1 to Dec. of Stephen Schuetz, Exh. A (October 21, 2005)(Dckt. No. 1180). As of now, there is no known "controversy or claim" between E&Y and Friedman's. It is entirely possible that

Friedman's examination of E&Y's documents will reveal no causes of action or claims exist. Until such causes of action or claims are identified and asserted, however, no "controversy or claim" exists sufficient to trigger the application of the arbitration clause in the engagement letter.[1] Accordingly, E&Y's objections are overruled.

## **ORDER**

Having ruled on the global objections, I now turn to the specifics of the scope of discovery. I order that (1) E&Y must produce to Friedman's any and all documents that it has provided to the SEC, the DOJ or to its former counsel, Alston & Bird, as well as all client papers within its possession, custody, and control; and (2) E&Y must produce all documents listed in paragraphs 1-46 of the Subpoena (Exhibit 2-C, beginning at page 7), except for the following items that were subject to modifications of the Subpoena that were agreed to by E&Y and Friedman's and/or limited by the Court:

1. Training Manuals;

2. GAAS/GAAP interpretations unrelated to the audits (whether or not completed) of Crescent Jewelers, Morgan Schiff, and Friedman's;

---

[1] Furthermore, Daisytek recognized that a court allowing both Rule 2004 examination as well as discovery pursuant to an arbitration clause retains the discretion to determine the limits to be placed on such "dual-purpose discovery." 323 B.R. at 188 n.9; *see also* In re Gandy, 299 F.3d at 499 ("Although it is technically possible that the Debtor's case be divided and some claims be sent to arbitration, this approach here would be of disservice to the parties and defeat the purposes of the Bankruptcy Code. Parallel proceedings would be wasteful and inefficient, and potentially could yield different results and subject parties to dichotomous obligations.")(citations omitted).

3. Workpapers related to the audits of Friedman's 401K plans;

4. Proprietary Computer Programs, subject to the reservation of rights of the co-fiduciaries to renew the request for production if it is determined that these programs are necessary to understand the workpapers;

5. Communications with E&Y's insurer;

6. Audit Manuals to the extent they do not relate to the audits (whether or not completed) of Crescent Jewelers, Morgan Schiff, and Friedman's;

7. Document-retention policies, unless it is determined that any document otherwise discoverable is lost, misplaced, or has been destroyed; and

8. Those documents that fall under Paragraphs 39 and 40 of the Subpoena seeking the discovery of, *inter alia*, peer review materials will be the subject of a separate order after consideration of supplemental briefs that the parties must file by December 23, 2005.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 15th day of December, 2005.