# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
at 4 O'clock & 01 min PM
Date 9/21/06

United States Bankruptcy Court
Savannah, Georgia

In the matter of: )
) Chapter 11 Case
FRIEDMAN'S, INC., et al., )
) Number 05-40129
*Debtors* )

## MEMORANDUM AND ORDER ON THE POST-EFFECTIVE DATE COMMITTEE'S OBJECTION TO THE CLAIM OF AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, ET AL.

The Debtors' Chapter 11 case was filed on January 14, 2005, and a Plan of Reorganization (the "Plan") was confirmed on November 23, 2005. The Plan created a Post-Effective Date Committee (the "PEDC") with the responsibility of administering, disputing, objecting to, compromising, or otherwise resolving all general unsecured claims against the Debtors. *See* Dckt. No. 1338, Plan ¶ 9.6(b) (November 23, 2005). Pursuant to that grant of authority, the PEDC has filed an objection to Claim No. 227, the claim of American Bankers Insurance Company of Florida, American Bankers Life Assurance Company of Florida, and American Reliable Insurance Company (collectively, "ABI"). *See* Dckt. No. 1623 (May 5, 2006); Dckt. No. 1686 (June 9, 2006); Dckt. No. 1711 (June 27, 2006). A hearing on this matter was held on June 29, 2006.

AO 72A
(Rev. 8/82)

## FINDINGS OF FACT

ABI's claim against the Debtors stems from its business relationship with Friedman's, in which ABI agreed to provide certain insurance products for sale to Friedman's customers in West Virginia. The relationship between Friedman's and ABI is governed by a Service Expense Reimbursement Agreement (the "SERA"), which contains an indemnification clause. The terms of that clause are as follows:

> **INDEMNIFICATION.** Company [ABI] shall indemnify Customer [Friedman's] against all claims, costs and expenses (including reasonable attorneys' fees) arising from any negligent act or omission or willful misconduct of Company [ABI], its employees, agents or representatives (other than Customer [Friedman's], its employees, agents or representatives of Customer [Friedman's]).
>
> Customer [Friedman's] shall indemnify Company [ABI] against all claims, costs and expenses (including reasonable attorneys' fees) arising from any failure to perform its duties under this Agreement or from any negligent act or omission or willful misconduct of Customer [Friedman's], its employees, agents or representatives.
>
> Notwithstanding the indemnification stated above, Customer [Friedman's] shall participate in premium refunds or other return of premiums based upon State/Legal Requirements at the same percentage rate at which Expense Reimbursement on such premiums was paid to Customer [Friedman's].
>
> Dckt. No. 1686, Ex. B (June 9, 2006).

In 2000, a consumer fraud class action lawsuit was instituted against Friedman's and ABI in West Virginia state court. As the class representative of that lawsuit, James Dunlap sought to hold Friedman's liable for various violations of the West Virginia Consumer Credit and Protection Act (hereinafter "the Dunlap Class").[1] *See* W. Va. Code § 46A-1-101 *et seq.* The Dunlap Class charged Friedman's with, *inter alia*, selling its customers credit insurance products through hidden charges and fees. It also joined ABI as a defendant in the lawsuit, alleging that ABI had entered into a joint venture with Friedman's to provide the credit insurance products that Friedman's allegedly sold to its West Virginia customers without their knowledge or consent. The Dunlap Class sought to hold ABI liable for Friedman's acts and omissions, claiming that ABI aided and abetted Friedman's scheme to defraud its West Virginia customers.

In filing its proof of claim against the Debtors, ABI asserts that Friedman's acts and omissions trigger the application of the indemnification clause under the SERA. *See* Dckt. No. 1638 (May 18, 2006); Dckt. No. 1701 (June 22, 2006); Dckt. No. 1732 (July 13, 2006). Thus, the basis of ABI's claim against the Debtors is contractual indemnification under the SERA.

---

[1] Dunlap filed a proof of claim against the Debtors on behalf of the Dunlap Class, as well. The PEDC also filed an objection to that claim. This Court resolved that objection through a separate order. *See* Dckt. No. 1753 (August 23, 2006).

## CONCLUSIONS OF LAW

Under the terms of the Plan, all general unsecured creditors are placed in Class 5. As mentioned *supra*, the PEDC is charged under the Plan with the responsibility of resolving the claims of all Class 5 creditors. The PEDC objects to the ABI claim, and it raises four primary arguments to support its objection. The Court will now address each argument.

*I.*

The PEDC acknowledges that Friedman's is obligated to indemnify ABI for any claims, costs, or expenses that may arise against it from Friedman's failure to perform its duties under the SERA or from any negligent act, omission, or willful misconduct by Friedman's. *See* Dckt. No. 1686, p. 7 (June 9, 2006). The PEDC asserts, however, that the possibility of Friedman's being found guilty of such acts or omissions for which ABI is held accountable is "an occurrence that is so unlikely that it defies logic or reason." Id. at 8.

The litigation involving the Dunlap Class has been ongoing now for more than five years, and it has yet to reach a resolution. No judgment or agreement between the parties has determined whether Friedman's engaged in any negligent acts, omissions, or willful conduct that results in a "cost or expense" to ABI. As a result of the continuing litigation in the Dunlap Class, it is premature to rule out any possibility that the indemnification clause will be triggered. In fact, Friedman's has previously entered into a

settlement agreement with the West Virginia Attorney General, under which Friedman's agreed to pay a little more than $90,000.00 in compensatory damages to 1,720 West Virginia consumers. Although Friedman's denied that it had engaged in any wrongdoing or unlawful acts in that agreement, the fact that such a settlement occurred is further evidence that it is still too early to conclude that Friedman's did not engage in any activity for which ABI could be held liable or incurred costs and expenses that could give arise to an indemnification claim under the SERA.

## II.

The PEDC argues that Friedman's is not obligated to indemnify ABI for any liability arising from ABI's negligent acts, omissions, or willful misconduct or its failure to perform its duties under the SERA. *See* Dckt. No. 1686, p. 8 (June 9, 2006). While it is true that the indemnification clause in the SERA allows for reciprocal indemnification, ABI is not seeking indemnification for its own acts, omissions, or willful misconduct. As noted in the Second Amended Complaint that was filed in the Circuit Court of Kanawha County, West Virginia, it is clear that a considerable portion of the claims of the Dunlap Class is based on the actions of Friedman's. *See* Dckt. No. 1646 (May 8, 2006)(a copy of the Second Amended Complaint is attached). For example, page two of the Second Amended Complaint states the following:

> 2. Plaintiffs allege that Defendant Friedman's utilized an

> illegal, fraudulent and unconscionable scheme to charge its customers, without their knowledge or consent, for credit life insurance, credit disability insurance, and property insurance in connection with the purchase and financing of jewelry and/or other consumer goods from Defendant Friedman's.
>
> 3. As a direct result of Defendant Friedman's negligent, unlawful, unfair, unconscionable, deceptive, reckless and willful actions, Plaintiffs suffered monetary loss, consequential and incidental damages, compensatory damages, emotional and mental distress, aggravation, anxiety, annoyance and inconvenience.

Id.

This language demonstrates that it is Friedman's actions or omissions in West Virginia that largely form the basis of the claims of the Dunlap Class. As a result, it is clear that what ABI is seeking indemnification for is any future liability or costs and expenses that it may incur as a result of the acts or omissions of Friedman's. ABI is not basing its claim against the Debtors on its own conduct but upon the actions of Friedman's in West Virginia.

### III.

The PEDC also objects to ABI's claim by referencing and incorporating its objection to the claim of the Dunlap Class in this bankruptcy case. The PEDC contends that a finding by this Court that Dunlap's claim against Friedman's should be disallowed or subordinated would deprive ABI of any indemnification claim against the Debtors. As noted

*supra*, James Dunlap filed a proof of claim against the Debtors on behalf of the Dunlap Class, to which the PEDC filed an objection. A significant portion of Dunlap's claim was based on fines, penalties, and/or punitive damages against Friedman's. The PEDC argued that under Eleventh Circuit precedent, the entire Dunlap claim should have been disallowed. *See* Novak v. Callahan (In re GAC Corp.), 681 F.2d 1295, 1301 (11th Cir. 1982)(stating that allowing a claim for punitive damages in bankruptcy would "force innocent creditors to pay for the bankrupt's wrongdoing"). In the alternative, the PEDC argued that the Dunlap claim should have been subordinated. In making this argument, the PEDC cited the Plan's definition of "Subordinated Claim," which includes "all fines, penalties, Claims for disgorgement, or order of restitution against any of the Debtors." Dckt. No. 1338, Plan ¶ 1.132(vi) (November 23, 2005). Also, the PEDC argued that the Dunlap claim should have been equitably subordinated as a penalty claim under the provisions of 11 U.S.C. § 510(c).

As noted in footnote 1 of this Memorandum and Order, this Court has entered an order resolving, in part, the PEDC's objection to Dunlap's claim. *See* Dckt. No. 1753 (August 23, 2006). In that order, I concluded that those portions of Dunlap's claims that were based on fines, penalties, and punitive damages could not be disallowed but would be subordinated under the Plan's definition of "Subordinated Claim." Alternatively, I concluded that only a portion of Dunlap's claim could be equitably subordinated. *See* Id., p. 23-24. As a result, the Dunlap Class still holds a claim against the Debtors, albeit a wholly or partially subordinated claim. Since that claim remains an allowed claim, ABI still holds

a potential indemnification claim for its losses that are derivative of the Dunlap action.

Furthermore, any determination of the status of the Dunlap claim in this Chapter 11 case does not prevent the Dunlap Class from going forward, either in this Court or elsewhere, to secure a judgment against ABI. ABI's indemnification claim against the Debtors stems from any potential liability that it may face or costs and expenses that it may incur as a result of Friedman's past activities. Whether Friedman's committed such acts or omissions for which ABI will be held liable has not yet been determined by this Court or any other court. As mentioned *supra*, no conclusive findings have yet been reached that exonerates Friedman's of any liability for the claims asserted against it by the Dunlap Class. Until such a finding is made or other resolution is achieved between the parties, this Court cannot conclude that ABI does not have an indemnification claim under the SERA against Friedman's.

*IV.*

The PEDC also contends that ABI's claim should be classified as a Class 8 Subordinated Claim. "Subordinated Claim" is defined by the Plan to include "any Claim against a Debtor" (other than claims of the Securities Exchange Commission, government settlement claims, or AG claims) for six categories of claims, including "for reimbursement, contribution, or *indemnification* allowed under section 502 of the Bankruptcy Code on account of any such Claim, including Claims based on allegations that the Debtors made

false and misleading statements and engaged in other deceptive acts in connection with the sale of securities." See Dckt. No. 1338, Plan ¶ 1.132(v) (November 23, 2005)(emphasis added). Since ABI is seeking a claim based on indemnification, the PEDC argues that ABI's claim falls under the Plan's definition of "Subordinated Claim" and belongs in Class 8.

The Court disagrees with the PEDC's interpretation of the Plan. Clearly, subsection (v) of the definition of "Subordinated Claim" is qualified by the phrase "on account of any such Claim." However, what "Claim" is the definition referring to? There are four other types of claims that fall under the definition of "Subordinated Claim" that precede subsection (v) of the definition. These include claims:

> (i) arising from a Securities Action, (ii) arising from rescission of a purchase or sale of shares or notes, or any other securities of any of the Debtors or affiliate of the Debtors, (iii) for damages arising from the purchase or sale of any such security, [and] (iv) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, but not limited to, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims.
>
> Dckt. No. 1338, Plan ¶ 1.132(i)-(iv) (November 23, 2005).

In contrast, it should be noted that subsection (vi) of the definition, which relates to fines and penalties against the Debtors, does not include the qualification of "on account of any such

9

Case:05-40129-LWD Doc#:1789 Filed:09/21/06 Entered:09/21/06 16:13:17 Page:10 of 11

Claim."

Because the definition of "Subordinated Claim" does not contain its own definition of "Claim," the most sensible and logical way to understand subsection (v)'s qualification of "on account of any such Claim" is to interpret "Claim" as referring to a claim described earlier in the definition in subsections (i) through (iv). Therefore, the definition of "Subordinated Claim" includes claims for indemnification only on account of claims that qualify under subsections (i) through (iv) of the Plan definition.[2] Because the claims of the Dunlap Class against Friedman's and ABI are not encompassed within subsections (i) through (iv) of the definition of "Subordinated Claim," any indemnification claim that ABI may have is not covered by subsection (v).[3] ABI's claim against the Debtors is not a "Subordinated Claim" and does not qualify as a Class 8 claim under the Plan.[4]

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the

---

[2] The lack of the qualification "on account of such Claim" in subsection (vi) led this Court to determine that those portions of the Dunlap claim for fines, penalties, and/or punitive damages qualified under subsection (vi) of the definition, even though the Dunlap claim itself did not independently qualify under the preceding subsections (i) through (iv). See Dckt. No. 1753 (August 23, 2006).

[3] The Court is aware that any potential judgment obtained by the Dunlap Class against ABI may be based on fines, penalties, and/or punitive damages. Whether any indemnification claim later asserted by ABI against the Debtors arising out of such a judgment is also deemed to be for "fines, penalties, Claims for disgorgement, or order of restitution" as derivative of the underlying misconduct is not in issue before the Court at this time.

[4] It should be noted that prior to confirmation of the Plan, the Debtors solicited ABI to vote for the Plan and sent ABI a Solicitation Package that included a ballot for members of Class 5, the class designated for general unsecured creditors. See Dckt. No. 1732 (July 13, 2006). In contrast, holders of Subordinated Claims were placed in Class 8 and were not permitted to vote on the Plan.

AO 72A (Rev. 8/82)    10

PEDC's objection to the claim of ABI, Claim No. 227, is DENIED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 20th day of September, 2006.